UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-616-RJC-DSC

| | | |
|---|---|---|
| **DUKE ENERGY CAROLINAS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **BLACKROCK COAL, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff Duke Energy Carolinas, LLC's ("Duke Energy") Motion for Entry of Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), (Doc. No. 8), filed on January 27, 2012. Defendant BlackRock Coal, LLC ("BlackRock") has not opposed the Motion for Entry of Default Judgment and the time for doing so has expired.

## I. BACKGROUND

Duke Energy filed a Complaint in this action on December 5, 2011. (Doc. No. 1). Defendant BlackRock was served with a copy of the Summons and Complaint on December 9, 2011. (Doc. No. 4). BlackRock failed to answer or otherwise defend the action within the time permitted by the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered BlackRock's default on January 26, 2012. (Doc. No. 7). Duke Energy's claim is for $13,294,492.47, plus costs and interest, for damages resulting from BlackRock's alleged breach of contract. (Doc. Nos. 1; 8-1 at 2: Affidavit of Michelle S. Spak).

On March 14, 2012, this Court ordered Duke Energy to provide supplemental briefing on

the sufficiency of its service of the summons and Complaint under Michigan law. (Doc. No. 9).
Duke Energy responded on March 26, 2012, (Doc. No. 10), stating as follows:

> Upon filing the lawsuit, Duke Energy attempted to serve BlackRock Coal's resident agent, Daniel Raetchi, with a copy of the Summons and Complaint. (See Bahs Aff., Ex. A, ¶ 2; Affidavit of Michelle S. Spak ("Spak Aff."), attached as Exhibit B, ¶ 2.) Duke Energy was informed that Mr. Raetchi was resident agent for BlackRock Coal through his employment with Howard & Howard Attorneys PLLC, but that Mr. Raetchi had since terminated his employment with Howard & Howard Attorneys PLLC. (Spak Aff., Ex. B, ¶ 4.) Duke Energy was further informed that Jess Bahs, another attorney at Howard & Howard Attorneys, PLLC had been substituted as resident agent for BlackRock Coal, and that Mr. Bahs would accept service of the Summons and Complaint on behalf of BlackRock Coal. (Spak Aff., Ex. B, ¶ 5.) And, Mr. Bahs did, in fact, accept service of the Summons and Complaint on December 9, 2011. (Bahs Aff., Ex. A, ¶¶ 2-3.) Mr. Bahs is aware of the lawsuit filed by Duke Energy against BlackRock Coal and has "notified individuals previously associated with the now out of business BlackRock Coal, LLC." (Bahs Aff., Ex. A, ¶ 4.)

(Doc. No. 10 at 2). The Court is now satisfied that Duke Energy's service of the summons and Complaint on BlackRock was sufficient. See Hill v. Frawley, 400 N.W.2d 328, 329 (Mich. Ct. App. 1986) ("Service-of-process rules are intended to satisfy the due process requirement that a defendant be informed of the pendency of an action by the best means available, by methods reasonably calculated to give a defendant actual notice of the proceeding and an opportunity to be heard and to present objections or defenses.") (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also MICH. R. CIV. P. 2.105(J)(1) ("Provisions for service of process contained in these rules are intended to satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances."); MICH. R. CIV. P. 2.105(J)(3) ("An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service.").

Because of its default in this matter, (Doc. No. 7), BlackRock is deemed to have admitted

2

Case 3:11-cv-00616-RJC-DSC   Document 11   Filed 03/29/12   Page 2 of 10

those well-pleaded facts alleged in the Complaint that are material to Duke Energy's claims against it. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). Accordingly, the factual summary below is consistent with that alleged in Duke Energy's Complaint. (Doc. No. 1).

In support of its claim for $13,294,492.47 plus costs and interest, Duke Energy states that on March 31, 2010, Duke Energy and BlackRock entered into an Agreement for the Sale and Purchase of Coal (the "Agreement") pursuant to which BlackRock agreed to sell, and Duke Energy agreed to purchase, approximately 320,000 tons of coal between April 2010 and December 31, 2010. (Doc. No. 1 at 1-2). The Agreement stated that the coal would be purchased, paid for, sold and delivered according to the following schedule:

- a. One Unit Train load of Coal (approximately 10,000 Tons) delivered in April 2010;
- b. Three Unit Train loads of Coal (approximately 30,000 Tons) Delivered in May 2010; and
- c. 280,000 Tons Delivered in approximately equal monthly shipments during the period June 1, 2010 through December 31, 2010.

(Doc. Nos. 1 at 3; 1-1 at § 3.1(i)-(iii)). The Contract Price for such Coal was $47.50 per ton. (Doc. Nos. 1 at 3; 1-1 at § 4.1(i)). The price included BlackRock's costs for all production and delivery activities. (Id.)

Duke Energy, "in its sole discretion," had the option to extend the Agreement through December 31, 2011, by giving notice to BlackRock of its intention on or before August 31, 2010. (Doc. Nos. 1 at 3; 1-1 at § 2). Despite the August 31, 2010 deadline, Duke Energy alleges that

3

on September 27, 2010, it exercised its option to extend the term of the Agreement until December 31, 2011. (Doc. Nos. 1 at 3; 1-2 at 2: Letter from Elliott Batson to Bennett Donaldson, dated September 27, 2010 (the "September 2010 Letter")). Duke Energy alleges that pursuant to the September 27, 2010 letter, BlackRock was "obligated to ship and Duke Energy [was] obligated to receive 500,000 Tons in 2011 at the Contract Price of $57.00 per ton." (Id.).

According to Duke Energy, the Agreement and Letter obligated BlackRock to sell and Duke Energy to purchase 320,000 Tons at $47.50 per ton and 500,000 Tons at $57.00 per ton. (Doc. No. 1 at 3). BlackRock, however, shipped only 42,638 Tons, all in 2010, for which Duke paid $47.50 per ton. (Id.). BlackRock failed to ship 277,362 Tons at $47.50 per ton and the entire 2011 contract amount of 500,000 Tons at $57.00 per ton. (Id.). On October 15, 2010, Duke Energy sent BlackRock a letter indicating that BlackRock failed to deliver Coal as specified under the Agreement. (Id.). Duke Energy alleges that despite the October 15, 2010 letter, BlackRock did not remedy the situation or deliver the missing tonnage. (Id.).

Duke Energy sent BlackRock another letter on March 29, 2011, reiterating BlackRock's failure to deliver the Coal in 2010 and failure to make any deliveries in 2011. (Id. at 4). In its March 2011 Letter, Duke Energy claimed damages for BlackRock's failure to deliver the Coal and terminated the Agreement effective March 31, 2011 pursuant to Section 14.1(ii) of the Agreement. (Id.).

Section 14.1(ii) of the Agreement provides that an "Event of Default" occurs upon "the failure of the Defaulting Party to deliver or to accept delivery of the Contract Quantity of Coal to be delivered hereunder unless excused by Force Majeure or the other Party's failure to perform." (Doc. Nos. 1 at 4; 1-1 at § 14.1(ii)). Upon an Event of Default, the Agreement provides the non-defaulting party the right to terminate the Agreement ("Early Termination"). (Doc. Nos. 1

4

at 4; 1-1 at § 14.2).

The Agreement specifies the amount of damages due to Duke Energy in the event BlackRock failed to deliver the coal:

> Damages Owed to Buyer. If Seller [Blackrock] fails to deliver all or any part of the Contract Quantity of Coal to be delivered hereunder, Seller shall pay Buyer for each Ton of such deficiency an amount equal to the positive difference, if any, obtained by subtracting the Contract Price for the deficiency from the Replacement Price plus (i) any additional transportation costs incurred by Buyer due to such failure, and (ii) Legal Costs incurred by Buyer in connection with such failure and replacement. "Replacement Price" means the price, determined by Buyer in a commercially reasonable manner, at which Buyer purchases (if at all) substitute Coal which meets the Specifications or, absent such purchase, the market price for such Contract Quantity and quality of Coal, FOB Delivery Point.

(Doc. Nos. 1 at 4; 1-1 at § 13.1). The same damages calculation applies in the event of termination as a result of default:

> Damages Owed to Buyer. If Buyer [Duke Energy] is the Non-Defaulting Party and establishes an Early Termination Date, then Seller [BlackRock] shall pay Buyer for each Ton which Seller would have been obligated to deliver between the Early Termination Date and the end of the Term but for the early termination an amount equal to the positive difference, if any, obtained by subtracting the Contract Price for such Tons from the Replacement Price for such Tons plus (i) any additional transportation costs incurred by Buyer due to such failure, and (ii) Legal Costs incurred by Buyer in connection with the Event of Default and replacement.

(Doc. Nos. 1 at 4-5; 1-1 at § 14.3.1).

As a result of BlackRock's failure to supply the Coal required under the Agreement in 2010, Duke Energy was forced to purchase replacement Coal in the open market at a weighted average cost of $70.18. (Doc. No. 1 at 5). In 2010, BlackRock failed to deliver 277,362 tons, at a cost to Duke Energy of $6,290,272.01[1] (($70.18 replacement price - $47.50 contract price) x

---

[1] The Court notes that $70.18-$47.50 = $22.68 and $22.68 x 277,362 Tons = $6,290,570.16, not $6,290,272.01. The Court assumes that Duke Energy based its calculations on additional decimals, and not the rounded figures provided to the Court. Because Duke

5

277,362 tons). (Id.).

Duke Energy further alleges that as a result of BlackRock's failure to supply the Coal required under the Agreement in 2011, Duke Energy was forced to purchase replacement Coal in the open market at a weighted average cost of $71.01. (Id.). In 2011, Duke Energy alleges that BlackRock failed to deliver 500,000 tons, at a cost to Duke Energy of $7,004,220.46[2] (($71.01 replacement price - $57.00 contract price) x 500,000 tons). (Id.). Duke Energy states that its damages as a result of BlackRock's failure to deliver total $13,294,492.47.[3] (Id.). Duke Energy alleges that despite BlackRock's receipt of the October 15, 2010 notice of default, BlackRock failed to deliver the required Coal in breach of its contractual obligations, and failed to pay the specified damages. (Id. at 1, 5).

## II.　LEGAL STANDARD

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan, 253 F.3d at 780 (citations

---

Energy seeks less than the amount arrived at by the Court, the Court will not disturb the calculations Duke Energy has provided.

[2] The Court notes that $71.01-$57.00 = $14.01 and $14.01 x 500,000 Tons = $7,005,000, not $7,004,220.46. The Court assumes that Duke Energy based its calculations on additional decimals, and not the rounded figures provided to the Court. Because Duke Energy seeks less than the amount arrived at by the Court, the Court will not disturb the calculations Duke Energy has provided.

[3] See Footnotes 1 and 2, supra.

6

omitted); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); FED. R. CIV. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a ""defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law"") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

7

Case 3:11-cv-00616-RJC-DSC   Document 11   Filed 03/29/12   Page 7 of 10

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17).  The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422).  While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

### III. DISCUSSION

Duke Energy's Complaint sets forth one claim for relief for breach of contract.  Duke Energy alleges that "BlackRock and Duke Energy entered into a legally binding contract for the sale and purchase of coal, the Agreement."  (Doc. No. 1 at 5).  Duke Energy further alleges that BlackRock was obligated to deliver 320,000 tons of coal in 2010 and 500,000 tons in 2011.  (Id. at 2-3).  According to Duke Energy, BlackRock breached the Agreement by its failure to deliver 277,362 tons of coal in 2010 and 500,000 tons in 2011.

Duke Energy has sufficiently alleged that BlackRock breached the Agreement with respect to its 2010 failure to supply 277,362 tons of Coal.  Further, Duke Energy has provided sufficient damages calculations to allow this Court to enter a Default Judgment with regard to the 2010 breach. FED. R. CIV. P. 55(b).  Duke Energy's Motion for Default Judgment with respect to BlackRock's 2010 breach is, therefore, **GRANTED**.  The Court enters judgment in favor of Duke Energy and against BlackRock in the amount of $6,290,272.01 for BlackRock's 2010 breach of the Agreement.

However, with regard to BlackRock's alleged 2011 breach, the Court finds that Duke Energy has not alleged sufficient facts to support its claim for relief. Duke Energy, "in its sole discretion," had the option to extend the Agreement through December 31, 2011, by giving notice to BlackRock of its intention on or before August 31, 2010. (Doc. Nos. 1 at 3; 1-1 at § 2). Despite the August 31, 2010 deadline, Duke Energy alleges that on September 27, 2010, it exercised its option to extend the term of the Agreement until December 31, 2011. (Doc. Nos. 1 at 3; 1-2 at 2). Duke Energy alleges that pursuant to the September 27, 2010 letter, BlackRock was "obligated to ship and Duke Energy [was] obligated to receive 500,000 Tons in 2011 at the Contract Price of $57.00 per ton." (Id.). Duke Energy's conclusory statement that it exercised its option to extend the Agreement by its September 27, 2010 letter, sent nearly a month after the August 31, 2010 deadline, is a conclusion of law which BlackRock is not held to admit. See DIRECTV, 200 F. App'x at 258. Duke Energy's Motion for Default Judgment with respect to BlackRock's alleged 2011 breach is, therefore, **DENIED**.

Having reviewed the claims asserted in the Complaint, (Doc. No. 1), and the evidence submitted in connection with Duke Energy's Motion for Default Judgment, (Doc. No. 8), the Court finds that Duke Energy's Motion should be, and hereby is, **GRANTED in part and DENIED in part**.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Judgment is entered in favor of Duke Energy and against BlackRock in the amount of six million, two hundred ninety thousand, two hundred seventy-two dollars and one cent ($6,290,272.01);

2. Interest from the date of entry of this judgment shall accrue at the legal rate,

9

Case 3:11-cv-00616-RJC-DSC   Document 11   Filed 03/29/12   Page 9 of 10

pursuant to 28 U.S.C. § 1961; and

3. Pursuant to Fed. R. Civ. P. 54(d), Duke Energy is awarded its costs in this action.


Signed: March 29, 2012

*[signature]*

Robert J. Conrad, Jr.
Chief United States District Judge